J-S23025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GABRIEL MARTINEZ-LOPEZ | : | |
| | : | |
| Appellant | : | No. 1171 EDA 2019 |

Appeal from the PCRA Order Entered March 18, 2019
In the Court of Common Pleas of Montgomery County Criminal Division at
No(s): CP-46-CR-0003402-2010

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McCAFFERY, J.: **FILED JULY 17, 2020**

Gabriel Martinez-Lopez (Appellant) brings this *pro se* appeal from the order entered in the Montgomery County Court of Common Pleas dismissing his first petition under the Post-Conviction Relief Act (PCRA).[1] He raises three claims of trial counsel's ineffectiveness. We affirm.

This Court previously summarized the facts and procedural history of Appellant's case as follows.

> On April 9, 2010, Upper Merion Police, and members of the Montgomery County Detective Bureau, were dispatched to 148 Walker Lane in King of Prussia, Pennsylvania. Upon their arrival, police discovered the beaten body of Jose Armando Cazares-Olarte (hereinafter "the victim"). After processing the crime scene, police surmised that the victim had been killed at a different location, and his body dumped on Walker Lane. An autopsy revealed that the victim died as a result of numerous blunt force injuries to his head, face, and torso, and the manner

---

[1] 42 Pa.C.S. §§ 9541-9546.

of death was ruled a homicide. The victim's phone records revealed that Appellant was the last person to call the victim on the day of the murder.

On April 27, 2010, police interviewed Appellant. While he initially denied any involvement in the murder, he eventually admitted that he and the victim's wife, Delia Hernandez-Cortes (hereinafter, "Delia"), were involved in an affair. Appellant further confessed that Delia told him that the victim was physically abusing her, and she asked Appellant to kill him. Appellant agreed, and enlisted his brother, Miguel Martinez (hereinafter, "Miguel"), to assist him. Appellant told police that on the night of the murder, he and Miguel kidnapped the victim at gunpoint, forced him into the bed of their truck, and drove him to their home at 349 Heritage Lane in King of Prussia. During this time, Delia was in frequent contact with Appellant, asking him about the events taking place.

Once Appellant and Miguel arrived at their home with the victim, they removed him from the truck and ordered him to the ground. Appellant then grabbed a large retaining wall block and struck the victim with it in the back of the head. He then put a plastic bag around the victim's neck, attempting to suffocate him. Once the victim died, they loaded his body back into the truck and dumped it at the location where it was later discovered by police. The brothers then returned to their home to clean up. Appellant also told police that he hid the victim's keys, cell phone, and one of the victim's sneakers in his home. Police later discovered those items inside Appellant's residence. Appellant stated that at 6:40 a.m. on the morning after the murder, Delia called to ask him if the victim was dead, and Appellant informed her that he was.

Investigating detectives also interviewed Miguel, who essentially corroborated Appellant's version of the murder. Miguel added that Appellant had struck the victim three times in the head with the brick, and after the victim collapsed to the ground, Miguel took the rock and threw it at the victim's head.

After obtaining confessions from Appellant and Miguel, police interviewed Delia on April 30, 2010. Delia admitted that she and Appellant conspired to kill the victim because he had been physically and mentally abusive to Delia. Delia claimed that she confided in Appellant about the abuse, and Appellant suggested

that he kill the victim for Delia. She agreed, and offered to pay Appellant by giving him the victim's truck after the murder.

Appellant, Miguel, and Delia were all charged as co-defendants. Before trial, however, Miguel and Delia entered guilty pleas to third-degree murder and related offenses in exchange for testifying against Appellant . . . .

Appellant's case proceeded to a jury trial, at which Miguel and Delia, among others, testified for the Commonwealth. Appellant also took the stand in his own defense. At the conclusion of trial, the jury convicted Appellant of first-degree murder, kidnapping, robbery, criminal conspiracy, possession of a firearm [by a person prohibited], and criminal solicitation. The trial court ordered a pre-sentence investigation report (PSI), and conducted a sentencing hearing on March 27, 2014. At the conclusion thereof, the court sentenced Appellant to a mandatory term of life imprisonment, without the possibility of parole, for his first-degree murder offense. The court also imposed a consecutive term of 20 to 40 years' incarceration for Appellant's conspiracy conviction, and a consecutive term of 11½ to 23 months' imprisonment for his firearm offense. Additionally, the court imposed two concurrent terms of twenty years' probation for the kidnapping and robbery convictions.

*Commonwealth v. Martinez-Lopez*, 2248 EDA 2014 (unpub. memo. at 1-4) (Pa. Super. May 3, 2016), *appeal denied*, 388 MAL 2016 (Pa. Aug. 30, 2016).

Appellant appealed from his judgment of sentence, and this Court affirmed. The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on August 30, 2016. Appellant filed his initial PCRA petition on October 14, 2016. PCRA petitions filed within one year of the date the judgment becomes final are timely per 42 Pa.C.S. § 9545(b).

The PCRA court appointed counsel, who filed a motion to withdraw and no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa.

1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). The PCRA court granted counsel's motion; Appellant has not challenged the propriety of counsel's withdrawal.[2]

Appellant's petition was dismissed without a hearing by order docketed March 18, 2019. His notice of appeal was docketed on Friday, April 19, 2019. By operation of the prisoner mailbox rule, we deem the appeal to be timely filed. **See Commonwealth v. Jones**, 700 A.2d 423, 426 (Pa. 1997) (this Court is "inclined to accept any reasonably verifiable evidence of the date that the prisoner deposits the appeal with the prison authorities").

Appellant has three claims arising from alleged ineffective assistance of trial counsel. He raises them as follows:

> I. Whether trial counsel was ineffective for telling Appellant that he had to testify on his own behalf, and whether the [trial judge] committed judicial misconduct when [they] did not instruct Appellant that whether or not to testify in his own behalf was up to him.
>
> II. Whether trial counsel was ineffective for failing to request that [the trial judge] instruct the jury, when they asked could a defendant lose [specific intent], that yes a defendant could lose the intent, and/or give a clearer definition of intent.
>
> III. Whether trial counsel was ineffective for basically pleading [A]ppellant guilty by proxy, by either stipulating to, or either

---

[2] Appellant's petition was initially dismissed on June 15, 2017, after the PCRA court's order of May 26, 2017, denying Appellant's request for his file. On appeal, this Court vacated the order and remanded, directing the PCRA court to provide Appellant with the necessary documents (especially notes of testimony from his trial) to prepare his own amended petition. **Commonwealth v. Martinez-Lopez**, 2319 EDA 2017 (unpub. memo. at 5) (Pa. Super. January 16, 2018).

- 4 -

outright telling the jury that [A]ppellant was guilty of every element of all the charged offenses.

Appellant's Brief at 2 (spelling and grammar slightly modified).

Our appellate courts review PCRA orders to determine whether factual findings are supported by the record and legal conclusions are free from error. *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). When reviewing claims of ineffective assistance of counsel, courts must presume that counsel provided effective assistance. *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018). To overcome this presumption, our courts require the defendant to plead and prove that (1) the claim has arguable merit; (2) counsel lacked any reasonable basis for the action or inaction; and (3) the petitioner suffered prejudice as a result. *Id.* Prejudice is established only where, but for counsel's action or inaction, there was a reasonable probability that the proceeding would have had a different outcome. *Id.* at 150-51 (citation omitted). "[B]oilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective." *Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011).

To be clear, Appellant is not arguing that trial counsel misinformed him that testifying was legally mandated; he argues, rather, that counsel advised him that he **should** testify to address damaging pretrial statements made by Appellant. Appellant's Brief at 6. He claims that the trial court never advised him of his right to refrain from testifying. The record reflects that he was present during voir dire, when the trial court instructed jurors that "[t]he

- 5 -

defendant in a criminal case has the Fifth Amendment right to remain silent. No inference of guilt is to be drawn against him if he chooses not to testify at this trial nor can any adverse interest be drawn if he does not present a defense." N.T., 11/18/13, at 25-26.

"Claims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an accused's right to testify require a defendant to prove either that 'counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.'" *Commonwealth v. Miller*, 987 A.2d 638, 660 (Pa. 2009), *quoting* *Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000).

The PCRA court determined that Appellant could not prevail because he could not establish prejudice, as the evidence against him was overwhelming. PCRA Ct. Op., 8/30/19, at 11, 12 (unpaginated). Further, the PCRA court determined that his claims lacked merit, as counsel was applying a reasonable trial strategy. *Id.* at 10, 11.

Given that Appellant concedes that counsel advised him to testify to mitigate the damage done by Appellant's pretrial statements,[3] it would be impossible to conclude that the advice was so unreasonable that it vitiated Appellant's ability to make a knowing and intelligent decision on his own behalf, as the advice corresponded to a reasonable mitigation strategy.

---

[3] *See* Appellant's Brief at 6.

Appellant had confessed to murder, and several of his co-conspirators confirmed his account. Because of the damning nature of his pretrial statements, a strategy of chipping away at specific intent to attempt to mitigate is not unreasonable. This claim is meritless.[4]

Appellant next argues that trial counsel was ineffective for failing to request different jury instructions on specific intent. During deliberations, the jury asked the trial court whether a person could have specific intent and then lose it. The trial court told the jury that "the question is for you to determine what was his state of mind when he killed him." The trial court also reiterated its standard instruction on specific intent. N.T., 11/20/13, at 147-49.

To establish ineffectiveness, Appellant must show that the alternate course he argues counsel should have taken has arguable merit. *See Brown*, 196 A.3d at 150-51. The trial court did not err in its instructions to the jury; nor is it at all apparent that Appellant was in any way disadvantaged by the trial court's response to the jury's query. Counsel cannot be faulted for failing to raise a meritless claim. *See Commonwealth v. Harris*, 852 A.2d 1168, 1173 (Pa. 2004).

Appellant claims that the court's instruction relieved the Commonwealth of the burden of proving his state of mind, and that the court misstated

---

[4] To the extent that Appellant faults the trial court for failing to inform him of his right not to testify, the argument is void of merit in that it is clear that Appellant knew that testifying was a strategic decision and not legally mandated; this allegation also fails because Appellant was present when the trial court advised potential jurors of Appellant's right not to testify. *See* N.T., 11/18/13, at 25-26.

- 7 -

Pennsylvania law. In fact, the trial court did not misstate Pennsylvania law. The instruction that the jury must determine his intent **at the time of the killing** was actually favorable to Appellant, given that his co-conspirators testified that this was a killing for hire. Because there was ample testimony of premeditation, the court's instruction to determine his intent at the time of the killing (as opposed to focusing on the times prior to the killing when Appellant discussed with others his intent to kill the victim) gave Appellant a chance at being convicted of a lesser degree of homicide. However, it is also apparent that the mountain of incriminating evidence doomed his defense, as well as rendering any potential error harmless. *See Brown*, 196 A.3d at 150-51.

Finally, Appellant argues that trial counsel was ineffective for "basically pleading [him] guilty by proxy" by conceding "every element of all the charged offenses." Appellant's Brief at 10. Elsewhere in his brief, he concedes that this is inaccurate, and that trial counsel employed a strategy of contesting specific intent to attempt to mitigate the damage that Appellant had inflicted with his incriminating pretrial statements and to give Appellant a chance to escape a life sentence by persuading the jury to convict of a lesser degree of homicide. *See id.* at 8 (acknowledging that trial counsel contested specific intent).

The record reflects, however, that trial counsel's strategy of contesting specific intent was designed to preserve the possibility that Appellant might

be convicted of a lesser degree of murder, with the potential to escape a mandatory sentence of life without the possibility of parole.[5]

Appellant also argues that this Court should apply **United States v. Cronic**, 466 U.S. 648 (1984), to hold that Appellant was *per se* prejudiced by trial counsel's concessions. In **Cronic**, the Supreme Court held that some deficiencies constituted constructive denial of counsel, and there, ineffectiveness is established even absent a showing of prejudice. **Id.** at 660.

**Cronic** reminds us that "the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." **Cronic**, 466 U.S. at 656 n.19. Appellant has not demonstrated the type of categorical failure that implicates **Cronic**; the **Strickland** standard thus applies. The oft-repeated admonition that our courts will not consider ineffectiveness claims in a vacuum demands that we instead consider the context in which counsel's performance was made.[6] In this case, that means taking into account the overwhelming evidence not only of guilt but of premeditation.

Appellant has not shown that he is entitled to relief; thus we affirm. Order affirmed.

---

[5] **See** 18 Pa.C.S. §§ 1102(d), 2502(c).

[6] **See, e.g., Commonwealth v. Anderson**, 461 A.2d 208, 214 (Pa. 1983) ("claims of ineffectiveness cannot be abstractly reviewed in a vacuum").

President Judge Emeritus Ford Elliott joins.

Judge Nichols concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/20